**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wing Fook LUI, Defendant–Appellant.**

**No. 89–50557.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1991.

Decided Aug. 5, 1991.

Donald C. Randolph, Overland, Berke, Wesley, Gits, Randolph & Levanas, Santa Monica, Cal., for defendant-appellant.

Patricia A. Beaman, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BOOCHEVER, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellant Wing Fook Lui appeals his conviction on one count of importation of heroin, in violation of 21 U.S.C. § 952(a), and one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), following a jury trial. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

I

On May 5, 1989 Lui arrived at Los Angeles International Airport. Lui had begun his trip in Hong Kong, stopping for ten days in Taiwan and two days in Korea. A United States Customs Inspector, noticing that Lui appeared nervous, approached him and asked to see his plane ticket, passport, and customs declaration. Lui told the Inspector that he had come to Los Angeles to show samples of jade figurines to his nephew, who Lui said owned a store. Noting that Lui had failed to claim the figurines on his customs declaration, the inspector decided to bring Lui and his luggage to a

secondary inspection area. After some delay, the inspector found two hard-shell suitcases that Lui identified as his.

At the inspector's direction, Lui opened the suitcases and removed some of the loosely packed clothing inside. As Lui did so, the inspector noticed that each side of the suitcases was elevated and appeared to be false. The false areas were four inches from the actual sides of the cases, leaving only two to three inches on each side for clothing. The two suitcases contained over 12 kilograms of nearly 96 percent pure heroin.

Lui was charged with one count of importation of heroin and one count of possession with intent to distribute heroin. On the day of trial, Lui moved, in limine, to preclude the government from offering into evidence the expert testimony of Special Agent Lynn Wood of the United States Customs Service regarding drug courier profiles. The motion was denied and Agent Wood testified.

The jury convicted Lui on both counts of the indictment. The court denied Lui's request that he be categorized as a minimal or minor participant and sentenced him to 188 months imprisonment, to be followed by a five-year term of supervised release. Lui appeals both his conviction and his sentence.

## II

Lui first argues that the district court improperly admitted expert testimony by Special Agent Wood regarding drug couriers and that this testimony prejudiced his case. Lui specifically complains that Wood's testimony tied his behavior to that of a drug courier in five ways: 1) although "heroin couriers have a hundred ways to smuggle heroin," typically they wrap it around their bodies or place it in false bottoms and tops of suitcases; 2) in approximately 80 percent of smuggling cases, couriers use hard-sided suitcases; 3) couri-

ers often use the excuse of conducting business or visiting a relative in the United States; 4) couriers create itineraries with multiple stops for short periods of time so as to enter the United States from a "non-source" country to avoid detection; and 5) couriers often use paging devices.

### A

■ Although Lui filed a pretrial motion in limine to exclude Agent Wood's testimony on the ground that it was improper drug courier profile testimony, he failed to object on this basis during trial.[1] The government argues that Lui therefore failed to preserve his objection raised in the motion in limine, and that we should review the admission of Agent Wood's testimony for plain error. See United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989).

■ A pretrial motion in limine preserves for appeal the issue of admissibility of that evidence if the substance of the objection has been thoroughly explored during the hearing and the district court's ruling permitting introduction of evidence was explicit and definitive. Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir.1986). While it is questionable how thoroughly the motion was explored, the court was definitive in its denial. The judge told Lui, "Your Motion is denied. It is frivolous, without merit. It really deserves a sanction."

In light of the district court's threat of sanctions, we do not believe that Lui should be penalized for his failure to raise the objection again at trial. We therefore find that the objection was preserved and we review the admission of Agent Wood's testimony for abuse of discretion. See United States v. Beltran–Rios, 878 F.2d 1208, 1210 (9th Cir.1989); United States v. Gillespie, 852 F.2d 475, 479 (9th Cir.1988).

1. Lui objected only twice during Wood's testimony. He first objected on the grounds that Wood's testimony "is focusing directly on defendant." The court overruled this objection, stating that Wood's opinion went to modus operan-

di. The defense then objected that a portion of Wood's testimony concerned what was on Lui's mind. The court sustained this objection, granted defendant's motion to strike, and instructed the jury to disregard the testimony.

## B

■ The Supreme Court has defined a drug courier profile as "a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753–54, 65 L.Ed.2d 890 (1979) (per curiam). These profiles are commonly used by agents as a basis for reasonable suspicion to stop and question a suspect or to form probable cause. *See e.g., United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1587 & n. 6, 104 L.Ed.2d 1 (1989).

We have denounced the use of drug courier profile evidence as substantive evidence of a defendant's innocence or guilt.

> Drug courier profiles are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers.... Every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officials in investigating criminal activity. Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation.

*Beltran–Rios*, 878 F.2d at 1210 (quoting *United States v. Hernandez–Cuartas*, 717 F.2d 552, 555 (11th Cir.1983)). *See also United States v. Jones*, 913 F.2d 174, 177 (4th Cir.1990) ("[T]he use of expert testimony as substantive evidence showing that the defendant 'fits the profile and, therefore, must have intended to distribute the cocaine in his possession' is error.") (quoting *United States v. Quigley*, 890 F.2d 1019, 1023–24 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990)), *cert. denied*, — U.S. —, 111 S.Ct. 766, 112 L.Ed.2d 785 (1991); *United States v. Carter*, 901 F.2d 683, 684 (8th Cir.1990) ("Drug courier profiles are investigative tools, not evidence of guilt.")

In *Quigley*, 890 F.2d 1019, the Eighth Circuit faced a situation similar to that which we find here. There, "the drug courier profile was presented at trial through the testimony of a narcotics agent, in the guise of an expert, as a technique for identifying a drug offender." *Id.* at 1022.

The agent delineated several characteristics of the profile and tied them to Quigley: purchasing tickets shortly before departure, paying for them with cash, checking no baggage, providing no local address, and exhibiting nervousness at the airport. The court noted that while the agent "did not directly say that he thought Quigley was guilty of the offense charged because he fit the profile, that was the clear implication of his testimony." *Id.* at 1024. As in *Quigley*, here Agent Wood tied Lui's actions to a drug courier profile for the purpose of proving Lui's guilt.

Drug courier profile evidence has been admitted, however, in certain limited circumstances. In *Beltran–Rios*, we allowed the use of drug courier profile evidence for impeachment purposes after the defendant opened the door to this line of questioning by emphasizing his apparent poverty. 878 F.2d at 1211. In *United States v. Gomez–Norena*, 908 F.2d 497, 501 (9th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), we admitted the use of drug courier profile testimony as background material to explain how the arrest occurred. Significantly, in *Gomez–Norena* the district judge twice cautioned the jury to consider the testimony only for that purpose.

The government argues that Agent Wood's testimony was admissible under a third exception: when the testimony is necessary to explain the modus operandi of the defendant. In *United States v. White*, 890 F.2d 1012, 1014 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990), the Eighth Circuit found no "clear abuse of discretion" when the district court admitted drug courier profile testimony for the limited purpose of explaining modus operandi. The court acknowledged, however, that it was "not indicat[ing] any belief that the district court followed the best course in admitting all the evidence that was admitted, or that we favor admission of such evidence in general." *Id.*

The question of whether drug courier profile evidence may be admitted to show a modus operandi is a difficult one, since the

purpose of modus operandi testimony, to "alert [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior," *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir.1984), is precisely the reason why drug courier profile testimony is so dangerous. *See Beltran–Rios*, 878 F.2d at 1210 ("Drug courier profiles are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers."). While it may be appropriate to recognize a modus operandi exception in certain cases, such as those involving complex drug-smuggling conspiracies, we need not reach that issue because we conclude on the facts of this case that the admission of drug courier profile evidence was improper.

Under Fed.R.Evid. 702, "[i]f scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue,* a witness qualified as an expert ... may testify thereto in the form of opinion or otherwise." (emphasis added). Modus operandi evidence is admitted to help the jury "to understand *complex* criminal activities." *Johnson*, 735 F.2d at 1202 (emphasis added). To prosecute Lui, however, the government had no need to explain a complex criminal scheme. On the contrary, Lui was caught red-handed with suitcases full of heroin.

There was thus little, if any, probative value to offset the potential prejudice caused by Agent Wood's testimony regarding drug courier profiles. By providing such testimony and tying it to Lui, Agent Wood took items that were perfectly innocent—use of a hard-sided suitcase, traveling for the stated purpose of visiting a relative—and turned them into evidence of guilt. Nor were the jurors provided with any limiting instruction to prevent them from using the profile evidence as a basis for finding guilt. By admitting the drug courier profile evidence, the district court abused its discretion.

### C

We next address whether this error was harmless. "[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059–60, 31 L.Ed.2d 340 (1972). The error is harmless if it is more probable than not that the prejudice resulting from the error did not materially affect the verdict. *United States v. Echavarria–Olarte*, 904 F.2d 1391, 1398 (9th Cir.1990).

The remaining evidence in the record overwhelmingly demonstrated Lui's guilt. Lui was carrying nearly 28 pounds of high-quality heroin in suitcases to which he had the keys and knew the numbers to the combination locks. His actions both before and after the discovery of the drugs were suspicious.[2] Finally his story for coming to the United States was completely discredited. Lui was unable to produce the jade figurines he claimed to be carrying, and his nephew testified at trial that he did not own a shop and that he had no plans to see Lui. Thus, any error committed was harmless. *See Quigley*, 890 F.2d at 1024 (although the court erred in admitting drug courier profile testimony, such error was harmless).

### III

Lui also alleges that the district court erred by denying his request for a reduction in his offense level on the ground that he was a minimal or minor participant in criminal activity. Sentencing Guidelines, § 3B1.2. Whether a defendant is a minor or minimal participant is a factual determination subject to the clearly erroneous standard. *United States v. Sanchez-Lopez*, 879 F.2d 541, 557 (9th Cir.1989); *Unit-*

---

**2.** The agent reported that while he was looking for Lui's luggage, Lui was acting disinterested and not helping in the search. When the agent found the luggage, Lui identified it as his, but when the inspector discovered the heroin and asked Lui what it was, Lui stepped away without attempting to see to what the inspector was referring, denied knowing what the heroin was, and denied that the luggage was his.

*ed States v. Gillock*, 886 F.2d 220, 222 (9th Cir.1989) (per curiam).

Lui argues that he should have received the reduction because "the evidence showed [he] was a one-time drug courier." He contends that he "exhibited a total lack of knowledge or understanding of the scope and structure of the enterprise," as well as "a total lack of sophistication in dealing with [the Customs Agent]," and that he "was substantially less culpable than those who owned the heroin and those who directed its distribution." The district court declined to award Lui a reduction in his base offense level, noting that he was importing a large amount of heroin, that heroin is a very dangerous drug, and that there was no evidence establishing that any other persons were involved in the heroin distribution other than him.

Lui failed to demonstrate that his role was purely that of a courier. In *United States v. Rigby*, 896 F.2d 392, 395 (9th Cir.1990), we upheld the district court's finding that the defendant had not established that he was merely a courier since there was no evidence, other than defendant's self-serving statement, to support such a finding. *See also United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989) ("The district judge need not accept the defendant's self-serving account of his role in the drug organization."), *cert. denied*, ── U.S. ──, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

Furthermore, a defendant may be a courier without being either a minimal or a minor participant. *United States v. Zweber*, 913 F.2d 705, 710 (9th Cir.1990) ("Culpability, not courier status, is the key."); *Buenrostro*, 868 F.2d at 137–38. Finally, we have recognized that possession of a substantial amount of narcotics is grounds for refusing to grant a sentence reduction. *See Sanchez–Lopez*, 879 F.2d at 557–58. Amounts far smaller than the twelve kilograms of heroin possessed by Lui have been cited as substantial. *See, e.g., id.* (574 grams of heroin); *United States v. Thomas*, 870 F.2d 174, 177 (5th Cir.1989) (one kilogram of cocaine); *United States v. Rojas*, 868 F.2d 1409, 1410 (5th Cir.1989) (497 grams of cocaine). Thus, the district court's refusal to grant a sentence reduction was not clearly erroneous.

AFFIRMED.