65 F.3d 177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Keith A. HARRIS, Defendant-Appellant.
 No. 94-30326.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1995.
Decided Aug. 16, 1995.
 
 Before: BROWNING, BOOCHEVER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Keith Harris was convicted after a jury trial of conspiracy to possess with intent to distribute heroin and one count of possession with intent to distribute, based largely on the testimony of Kathleen Lopez, a confidential informant. He appeals his conviction and sentence on multiple grounds.
 
 I. Sufficiency of the evidence
 
 3
 "The evidence is sufficient to support a conviction as long as, viewing the evidence in the light most favorable to the government, a rational jury could have found the defendants guilty beyond a reasonable doubt of each element of the crime." United States v. Hegwood, 977 F.2d 492, 497 (9th Cir.1992), cert. denied, 113 S.Ct. 2348 (1993).
 
 
 4
 A. Possession with intent to distribute: Count 6
 
 
 5
 Harris argues that there was insufficient evidence that he possessed heroin with intent to distribute on October 8, 1993, the date of the transaction charged in Count 6, the only individual transaction of which the jury found him guilty. He points out that Lopez was unable to remember anything about the October 8 transaction.
 
 
 6
 There was other evidence in the record regarding the delivery of the heroin on October 8. The jury heard a taped telephone conversation on the morning of October 8, in which Lopez and Harris discussed their plans to meet that evening at a rest area, and Harris said he needed to collect some money from other people or "I'm gonna be a little short." A DEA agent surveilled the rest area that evening, and testified that he saw Harris arrive late and observed a "delivery" of heroin from Lopez and Lidio Mercado to Harris, although he did not testify about the details or that he actually saw heroin change hands. Viewing the evidence in the light most favorable to the government, we find there was sufficient evidence to sustain a conviction for a transaction on that date.
 
 
 7
 B. Conspiracy to possess with intent to distribute
 
 
 8
 Harris argues that the evidence establishes only a buyer-seller relationship between him and the two brothers Lidio and Santos Mercado. He points out that there was no direct evidence of an agreement between him and Lidio. Harris contends that his only contact was Lopez, and because Lopez was a government agent with whom he cannot conspire, there is insufficient evidence that he ever conspired with anyone to distribute the heroin.
 
 
 9
 The essential elements of conspiracy under 21 U.S.C. Sec. 846 are an agreement to accomplish an illegal objective and the intent to commit the substantive offense. See United States v. Shabani, 115 S.Ct. 382, 384-85 (1994) (no overt act required for violation of drug conspiracy statute). "An agreement may be proven by circumstantial evidence that the defendants acted together with a common goal. Express agreement is not required; rather, agreement may be inferred from conduct." Hegwood, 977 F.2d at 497. The defendant must conspire with at least one bonafide coconspirator, and no true agreement exists when the only other person involved is a government agent. United States v. Schmidt, 947 F.2d 362, 367 (9th Cir.1991).
 
 
 10
 A simple buyer-seller relationship is not the same as a conspiracy to distribute. This court recently found that a defendant who grew marijuana on his own and then gave and sold some to friends had not been shown guilty of a conspiracy.
 
 
 11
 [P]roof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy.... [C]onspiracy requires proof of an agreement to commit a crime other than the crime that consists of the sale itself. Were the rule otherwise, every narcotics sale would constitute a conspiracy.
 
 
 12
 United States v. Lennick, 18 F.3d 814, 819 (9th Cir.) (citations and quotations omitted), cert. denied, 115 S.Ct. 162 (1994). To show a conspiracy, the government would have to show that the defendant's friends further distributed the marijuana, or bought in a quantity sufficient to support an inference of further distribution, and that the defendant knew of and agreed to the planned distribution. Id.
 
 
 13
 In a conspiracy to sell drugs, the supplier must know he is supplying a dealer.... To show a conspiracy, the government must show not only that [the defendant] gave drugs to other people knowing that they would further distribute them, but also that he had an agreement with these individuals to so further distribute the drugs.
 
 
 14
 Id. (citations and quotations omitted) (emphasis in original).
 
 
 15
 Unlike the defendant in Lennick, Harris was not the original source of the drugs. Instead, he was in the position of those who purchased the marijuana from a seller. Further, there was evidence in the record that Harris, unlike the buyers in Lennick, himself distributed the drugs he bought. Lopez testified that Harris told her he sold the heroin to "people at the college; that he sold it to people from out of state; that he had clients coming from Idaho and from Montana; truckers." Transcripts of taped telephone conversations played for the jury show that Harris waited for payment from others before purchasing the heroin.
 
 
 16
 In addition to the evidence of resale, there was testimony that the Mercados "fronted" drugs to Harris, delivering the drugs but waiting for later payment when Harris was unable to come up with the cash. This kind of credit arrangement is evidence supporting a finding of cooperation and partnership in a long-term distribution relationship. See United States v. Beasley, 2 F.3d 1551, 1560-61 (11th Cir.1993) ("fronting" is evidence of more than mere buyer-seller relationship), cert. denied, 114 S.Ct. 2751 (1994); United States v. Baker, 1 F.3d 596, 597 (7th Cir.) (credit transaction is strong evidence of membership in conspiracy), cert. denied, 114 S.Ct. 412 (1993); United States v. Casel, 995 F.2d 1299, 1306 (5th Cir.) (credit sales suggest stake in common enterprise), cert. denied, 114 S.Ct. 472 (1993); United States v. Sobamowo, 892 F.2d 90, 94 (D.C.Cir.1989) (deferred payment supports knowing involvement in single conspiracy to distribute), cert. denied, 498 U.S. 825 (1990). In one instance, Lidio accepted Harris' car in partial payment when Harris owed him money. The amounts purchased were substantial and the price Harris paid--$15,000 in two months--was consistent with the participation of more than one buyer.
 
 
 17
 Further, even though Harris insists his only "agreement" was with Lopez, circumstantial evidence exists from which a jury could conclude that he and Lidio had a common understanding. First, although much direct communication between Lidio and Harris was prevented by their language barrier, Harris would call Lidio, not Lopez, to set the individual transactions in motion. Second, the extension of credit to Harris was by Lidio, not Lopez, as Lopez gave the purchase money to the Mercados and received a separate fee for her services. For example, the car was intended for Lidio, not Lopez. Third, because Lopez did not drive, Lidio drove her to most of the transactions with Harris, although the actual delivery of the heroin was done by Lopez.
 
 
 18
 Lidio knew Harris, received calls from Harris, spoke of Harris, controlled the method of payment, fronted drugs to Harris, was aware of all the details of the transactions with Harris, and was present at many of the deliveries. While there is no direct evidence that Lidio knew Harris was distributing the heroin to others, Lopez testified directly that she knew, and she was in close contact with the Mercados as their go-between and translator. The circumstantial evidence supports an inference that Harris agreed with Lidio to distribute the heroin. "The high degree of coordination between [the defendant and his alleged coconspirator] is sufficient evidence from which a jury could find agreement." Hegwood, 977 F.2d at 497. See United States v. Kozinski, 16 F.3d 795, 808-09 (7th Cir.1994) (evidence necessary to support agreement to distribute includes transactions in large quantities of drugs, prolonged cooperation and "fronting," and standardized transactions); United States v. Medina, 944 F.2d 60, 65-66 (2d Cir.1991) (advance planning to deal in wholesale quantity of drugs supports broader conspiracy, not buyer-seller relationship), cert. denied, 503 U.S. 949 (1992).
 
 
 19
 The evidence shows the type of "chain" conspiracy common in drug distribution cases, in which each defendant, whether importer, supplier, or street distributor, "knew of each other's participation in the illegal enterprise and benefitted from it." United States v. Arbelaez, 719 F.2d 1453, 1459 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984). In such a case,
 
 
 20
 [t]he government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that [his] own benefits were dependent upon the success of the entire venture.
 
 
 21
 Id. at 1458-59 (quoting United States v. Kostoff, 585 F.2d 378, 380 (9th Cir.1978)). See Casel, 995 F.2d at 1306 (refusing to find buyer-seller relationship where defendant was acquainted only with one member of drug ring, because in a chain conspiracy a participant in a segment of the chain may be convicted of participating in the whole); Sobamowo, 892 F.2d at 94 (no buyer-seller relationship when conspiracy alleged is a chain and defendants were aware of the participation of third parties).
 
 
 22
 Finally, the indictment alleges a conspiracy beginning in June, 1993. Because Lopez did not become a government informant until September 1993, the jury could find that Lopez' agreement with Harris to distribute heroin constituted a conspiracy during June, July, and August 1993. There was evidence at trial that Lopez arranged from jail for Lidio to make at least one delivery of heroin to Harris in July 1993.
 
 
 23
 We find there was sufficient evidence for a properly instructed jury to find that Harris conspired to possess heroin with intent to distribute. Although there was sufficient evidence from which a jury could decide that Harris was guilty of conspiracy, Harris contends that he was entitled to an instruction on his competing theory of the case.
 
 II. Buyer-seller instruction
 
 24
 Harris requested an instruction indicating that if there was only a buyer-seller relationship he could not be found guilty of conspiracy. "[F]ailure to instruct the jury on the defendant's theory of the case, where there is evidence to support such instruction, is reversible per se and can never be considered harmless error." United States v. Zuniga, 6 F.3d 569, 571 (9th Cir.1993) (citation omitted). This court reviews de novo the refusal to give an the instruction when " 'the question to be resolved is whether other instructions adequately covered the defense theory of the case.' " United States v. Medrano, 5 F.3d 1214, 1218 (9th Cir.1993) (quoting United States v. Garcia-Cruz, 978 F.2d 537, 540 (9th Cir.1992), cert. denied, 113 S.Ct. 2453 (1993)).
 
 
 25
 The conspiracy instruction given by the district court did not make any explicit reference to the difference between merely buying heroin from an individual and conspiring with that individual to distribute heroin, nor did it explain how distribution differs from purchase or sale. The difference is not easily discerned. This case presented the additional complication that Lopez did not qualify as a coconspirator during her time as a government agent, a proposition stated only at the end of the general conspiracy instruction. Under these circumstances, the general instruction was not enough to cover the buyer-seller defense.
 
 
 26
 [A] standard instruction on the elements of a conspiracy is not sufficient to inform the jury of the [buyer-seller] theory of the case. Had the jury been properly focused, via proper instructions, on the legal distinctions between a conspiracy to distribute marijuana and a mere buyer-seller relationship, the jury may well have found a buyer-seller relationship in this case. The failure to properly instruct the jury therefore denied the defendant a fair trial on [the conspiracy count].
 
 
 27
 United States v. Pedigo, 12 F.3d 618, 623 (7th Cir.1993); see United States v. Douglas, 818 F.2d 1317, 1319, 1322 (7th Cir.1987) (standard conspiracy instructions do not adequately cover buyer-seller theory).
 
 
 28
 Because the instructions given did not cover the buyer-seller defense, the district court was required to give Harris' proposed instruction if there was any evidence to support it, even if the evidence was " 'weak, insufficient, inconsistent or of doubtful credibility.' " Zuniga, 6 F.3d at 570 (quoting United States v. Washington, 819 F.2d 221, 225 (9th Cir.1987)). This is true even where, as here, there is sufficient evidence of a conspiracy. See Pedigo, 12 F.3d at 626 (even where evidence sufficient to support conviction of conspiracy to distribute, instruction required because evidence also supported buyer-seller relationship); Douglas, 818 F.2d at 1321-22 (plain error to refuse to give buyer-seller instruction, where evidence, although contradictory, supports the theory); United States v. Prieskorn, 658 F.2d 631, 636 (8th Cir.1981) (failure to give buyer-seller instruction reversible error even when evidence of distribution conspiracy is sufficient, because "[u]nder the circumstances we cannot say that a reasonable person might not conclude that the evidence supported appellant's requested buyer-seller instruction.")
 
 
 29
 In this case, Lopez' ineligibility as a coconspirator left open the possibility that Harris had merely a buyer-seller relationship with the only alleged coconspirator, Lidio. The facts sufficiently support the theory to require the giving of the instruction. We therefore reverse Harris' conviction for conspiracy to possess with intent to distribute.
 
 III. Other issues
 A. Lopez' notes
 
 30
 "The trial court has wide limits of discretion in its decisions to permit the prosecution to refresh the memory of a witness[, and] [a]bsent clear injustice, that discretion will not be abridged." United States v. Mkhsian, 5 F.3d 1306, 1313 (9th Cir.1993) (quotations omitted).
 
 
 31
 We find no abuse of discretion in allowing Lopez to refer to her notes. Although Lopez looked at her notes at least six times during her testimony, the district court cautioned the jury, in judging her credibility, to weigh whether Lopez was refreshing her recollection or simply reading.
 
 
 32
 Further, the only individual transaction of which the jury convicted Harris was Count 6. Lopez had no notes at all regarding Count 6. The jury's acquittal on all the other counts may well indicate it did not rely on Lopez' testimony when she referred to her notes. No clear injustice appears on this record.
 
 B. DEA drug violator classification
 
 33
 This court reviews the district court's admission of Agent Weeks' testimony regarding Harris' Class Three classification for an abuse of discretion. United States v. Lui, 941 F.2d 844, 846 (9th Cir.1991).
 
 
 34
 Testimony regarding how a defendant fits a profile of a typical offender is generally inadmissible as substantive evidence of guilt. Id. at 847 (error to use testimony to show that defendant fits the profile and therefore must have committed the offense). Such profiles are "investigative tools, not evidence of guilt." Id. (quotations omitted).
 
 
 35
 In this case, the testimony that the DEA considered Harris a Class Three violator came directly after Agent Weeks testified that the DEA considered the Mercados to be Class One violators, and was offered for the purpose of explaining how the DEA viewed the relative positions of Harris and the Mercados. As such, the testimony was evidence of how the DEA constructed the investigation, with the Mercados as the prime targets, and why the DEA did not seize the heroin from Harris. See United States v. Gomez-Norena, 908 F.2d 497, 501 (9th Cir.) (not plain error to allow use of profile testimony to explain how arrest occurred), cert. denied, 498 U.S. 947 (1990). No abuse of discretion occurred.
 
 C. Vouching
 
 36
 "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness' veracity, or suggesting that information not presented to the jury supports the witness's testimony." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993) (as amended). Vouching presents special problems in cases in which the witness' credibility is crucial. Id. There is
 
 
 37
 no bright-line rule about when vouching will result in reversal. Rather, we consider a number of factors including: the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall. When reviewing for plain error, we then balance the seriousness of the vouching against the strength of the curative instruction and closeness of the case.
 
 
 38
 Id. at 1278. When an objection is made, the vouching is reviewed for harmless error; when no objection is registered, only plain error justifies reversal. United States v. Kerr, 981 F.2d 1050, 1053 (9th Cir.1992).
 
 
 39
 First, Harris claims the prosecution improperly expressed its belief that Lopez was telling the truth when Agent Weeks testified that all Lopez' information had been verified and substantiated, and when Weeks then answered "To my knowledge, no" when asked whether Lopez ever provided false information to him. Harris objected at trial. This was not improper vouching. Agent Weeks merely stated that he had been able to verify the information that Lopez provided. It does not appear to be a statement of personal opinion regarding her truthfulness.
 
 
 40
 Harris also identifies as improper a number of the prosecution's statements in final argument. He objected when the prosecution pointed out that Lopez' arson charges already had been dismissed, so that Lopez did not "need" Harris' case to avoid prosecution. This statement suggests that Lopez did not have a motive to lie. It does not, however, imply that the prosecutor knows she was truthful or has a personal opinion about her truthfulness.
 
 
 41
 Harris did not object to, but assigns as plain error, the prosecution's statements that to find Harris innocent, the jury "would have to find Kathleen Lopez and Lidio Mercado lied to you. You're going to have to believe that because their testimony was strong and based on their demeanor, truthful about their dealing heroin to the defendant," that the information Lopez provided was verified, and "did Kathleen Lopez ever provide false information to you concerning the activities of Lidio Mercado or Keith Harris? No."
 
 
 42
 These last remarks were not plain error. The prosecution simply repeated all the evidence verifying Lopez' statements, and then summarized it by stating that based on the testimony and demeanor of the witnesses the jury would have to believe Lopez testified truthfully. The defense argued in opening statements that Lopez was an unreliable witness with "substantial reasons to fabricate" who "starts telling lies about Mr. Harris to make [her "successful prosecutions"] an even three," and warned the jury to watch "her body language." Given the prosecutor's latitude in closing argument, the lack of reference to personal opinion, the defense's all-out attack on Lopez' credibility, and the context of closing argument, it is not a miscarriage of justice to fail to reverse Harris' conviction on this basis. Necoechea, 986 F.2d at 1276.
 
 D. Outrageous government conduct
 
 43
 "To violate due process, governmental conduct must be 'so grossly shocking and so outrageous as to violate the universal sense of justice.' " United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir.1991) (quoting United States v. Restrepo, 930 F.2d 705, 712 (9th Cir.1991)), cert. denied, 113 S.Ct. 417 (1992). To succeed in claiming that the government's direction of an informant violated due process, the defendant must show that the government engineered and directed the crime from start to finish. Id. The claim of outrageous conduct seldom succeeds. See United States v. Tucker, 28 F.3d 1420, 1427-28 (6th Cir.1994) (refusing to recognize the due process defense for lack of binding Supreme Court authority, and noting the refusal of the vast majority of courts to dismiss indictment on these grounds), cert. denied, 115 S.Ct. 1426 (1995).
 
 1. Lopez' agreement with the DEA
 
 44
 Harris argues that Lopez' agreement with the DEA makes the withdrawal of the arson charge against her contingent on the "successful prosecution," or conviction, of Harris, thus giving her a powerful incentive to testify untruthfully to ensure a finding of guilty. Lopez' arson charge was dropped before trial began, so this incentive would not have affected her trial testimony.
 
 2. Payments to Lopez
 
 45
 Harris objects to the DEA's payment of approximately $2,670 to Lopez, $500 of which she received when the Mercados were arrested. Such payments do not violate due process. See United States v. Ladley, 517 F.2d 1190, 1193 (9th Cir.1975) (fee contingent on arrest of defendant does not violate due process).
 
 
 46
 3. Lopez' role in the transactions.
 
 
 47
 Harris states that Lopez "developed" the individual transactions. Because the record shows that Harris himself initiated the transactions by an initial call to Lidio, however, we reject this argument. In addition, Harris was already involved in the purchase of heroin from the Mercados when Lopez entered into the contingency agreement. See United States v. Winslow, 962 F.2d 845, 849 (9th Cir.1992) (as amended) (no outrageous conduct to interpose informant where defendants already expressed interest in criminal activity).
 
 4. Government payment for Lopez' methadone
 
 48
 The government apparently gave Lopez a voucher to get her methadone when she came from Yakima to Spokane to testify. We see no outrageous conduct in providing a witness who travels to testify with the means to continue her treatment for addiction.
 
 5. Lopez' use of narcotics
 
 49
 Contrary to the terms of her agreement with the government, Lopez continued to use heroin after her release from jail. The government did not know of this use until a month before trial. Harris also complains that the government did not monitor Lopez' use of drugs. This does not amount to outrageous government conduct. See Barrera-Moreno, 951 F.2d at 1092 (no due process violation in failure to be aware of and stop informant's drug use).
 
 6. Lopez' two felony drug convictions
 
 50
 While her criminal history may bear on Lopez' credibility, it does not constitute outrageous government conduct to use an informant who has felony convictions.
 
 7. Failure to demonstrate actual delivery
 
 51
 Harris complains that no actual delivery of the heroin was observed by the DEA agents. This was also argued at trial, and goes to the strength of the government's case, not the propriety of its use of Lopez.
 
 
 52
 We find no outrageous government conduct.
 
 E. Search warrant
 
 53
 Harris claims the affidavit submitted in support of the search warrant issued for his home was too stale to support probable cause, and that material omissions occurred. We review the magistrate's issuance of a search warrant for clear error, United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991), giving deference to the issuing magistrate's determination of probable cause. See United States v. Johns, 948 F.2d 599, 602 (9th Cir.1991), cert. denied, 112 S.Ct. 3046 (1992)
 
 
 54
 Harris attempts to incorporate by reference the arguments (including staleness) that he made in his motion before the district court. We do not consider these arguments, as Ninth Circuit Rule 28-3.2 provides: "Parties must not append or incorporate by reference briefs submitted to the district court ... or refer this Court to such briefs for their arguments on the merits of the appeal."
 
 
 55
 Harris also makes an argument he did not raise below, that the affidavit "contained misleading conclusions that heroin was delivered to Harris." Harris identifies a number of what he calls misleading omissions, most of which are related to Lopez' credibility. Because he raised none of these below, this court reviews for plain error. None of the alleged omissions was plain error.
 
 F. Communications with the jury
 
 56
 Instruction 4 is the separate crime instruction, which explains that each charge should be considered separately; Instructions 11 and 12 explain the individual counts and the requirements for conviction on them. Harris complains that the district court overemphasized these instructions when it responded to the jury's question during deliberations.
 
 
 57
 The jury had all the instructions before them. They asked about the individual counts and were referred to the instructions specifically dealing with those counts. We find no abuse of discretion. See United States v. Collom, 614 F.2d 624, 631 (9th Cir.1979 (no abuse of discretion where district court essentially advised jury to follow instructions as given), cert. denied, 446 U.S. 923 (1980).
 
 G. Amount of heroin for sentencing purposes
 
 58
 Because we reverse Harris' conviction for conspiracy, we need not review the district court's factual finding regarding the amount of heroin involved in the conspiracy.
 
 H. Vindictive prosecution
 
 59
 In his pro se brief, Harris argues that it was prosecutorial vindictiveness to file the second indictment against him after Lidio Mercado pled guilty and Harris refused to do the same. Because this issue was not raised below, we review it for plain error.
 
 
 60
 The Supreme Court has held that in the give-and-take inherent in the plea bargaining context, there is no punishment or retaliation when the government obtains a superseding indictment with additional charges, after the defendant rejects a plea bargain. Bordenkircher v. Hayes, 434 U.S. 357, 363-64 (1978). See United States v. Garza-Juarez, 992 F.2d 896, 907 (9th Cir.1993) (not prosecutorial vindictiveness under Bordenkircher for prosecution to provide that more serious charges would be brought if defendant did not plead guilty), cert. denied, 114 S.Ct. 724 (1994).
 
 CONCLUSION
 
 61
 We reverse Harris' conviction for conspiracy to possess with intent to distribute. We affirm his conviction for possession with intent to distribute.
 
 
 62
 REVERSED IN PART AND AFFIRMED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3