69 F.3d 545
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arevalo-GAMBOA, Defendant-Appellant.
 No. 94-50236.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 11, 1995.
Decided Oct. 24, 1995.
 
 1
 Before: BROWNING and PREGERSON, Circuit Judges, and TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 INTRODUCTION
 
 3
 Defendant appeals his conviction and sentence for possession of cocaine with intent to distribute, and importation of cocaine in violation of 21 U.S.C. Secs. 841(a) and 952(a). Jurisdiction is under 28 U.S.C. Sec. 1291, and we AFFIRM.
 
 STANDARD OF REVIEW
 
 4
 This court reviews a district court's decision regarding the sufficiency of voir dire for an abuse of discretion. United States v. Payne, 944 F.2d 1458, 1474 (9th Cir.1991). The admission of expert testimony is reviewed for an abuse of discretion. United States v. Rahm, 993 F.2d 1405, 1410 (9th Cir.1993). A nonconstitutional evidentiary ruling will be reversed for an abuse of discretion only if the error more likely than not affected the verdict. United States v. Emmert, 829 F.2d 805, 808 (9th Cir.1987). We review a district court's decisions regarding relevancy and prejudice for an abuse of discretion. United States v. Daly, 974 F.2d 1215, 1216-17 (9th Cir.1992).
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 5
 Arevalo-Gamboa (Arevalo) arrived at the Los Angeles International Airport (LAX) from Bogota, Columbia on November 26, 1993. Arevalo was questioned by a customs inspector, then referred to secondary inspection. At secondary inspection, agents opened a plastic bag given to them by Arevalo. The bag contained what appeared to be 10 boxes of candy. A small incision into one of the boxes revealed a white powdery substance which later tested positive for cocaine. Arevalo was arrested.
 
 
 6
 On the morning of trial, the court denied Arevalo's motion to exclude expert testimony regarding how drug couriers are generally trusted by drug dealers. After voir dire of Customs Agent Rex McMillan, Arevalo objected to the introduction of his testimony as an expert because it failed to meet the test of Rule 702. Over counsel's objection, the court accepted McMillan as an expert. At trial, Customs Special Agent George Guzman testified that during his post-arrest interview, Arevalo told the agents that a man named "Gentil" offered to pay him money to deliver the candy boxes to someone in the United States, giving him 50,000 Columbian pesos. Arevalo reportedly stated that he received an airline ticket to New York from Gentil, and that Gentil asked him to bring a humidifier, Nintendo and telephone in exchange for $150.00. Arevalo also told the agents that he refused Gentil's demand to swallow 40 balloons containing heroin in order to smuggle the drugs into the U.S. Arevalo told agents he suspected the candy boxes contained drugs. At trial, Arevalo recanted many of his previous statements, testifying that Perdomo (also known as Don Rodolfo), not Gentil, gave him a 50,000 peso loan. Arevalo gave several explanations as to how he got the plane ticket, and denied that he had told agents that he suspected that drugs were in the candy boxes, while admitting that Gentil and Perdomo had asked him to swallow heroin balloons the day before he traveled.
 
 
 7
 During cross-examination, Arevalo stated that he, in fact, suspected drugs and claimed that Perdomo, not Gentil, gave him the boxes. On February 3, 1994, Arevalo was found guilty of possession with intent to distribute and importation of 3 kilograms of cocaine. On February 7, Arevalo filed a motion for new trial based on newly discovered evidence, which was denied. Arevalo timely appealed.
 
 DISCUSSION
 A. Sufficiency of Voir Dire
 
 8
 Defendant argues that the district court erred because it did not inquire into prospective jurors' specific attitudes regarding narcotics, and that the limited voir dire conducted by the court was insufficient to probe for juror bias or partiality.
 
 
 9
 District courts have considerable discretion in determining the manner and scope of voir dire. Mu'Min v. Virginia, 500 U.S. 415, 427 (1991).
 
 
 10
 This court has upheld voir dire in which the trial court inquires into bias or prejudice without probing jurors' specific experiences. See e.g., Payne, 944 F.2d at 1474-75 (district court's refusal to ask defendants proposed voir dire questions concerning juror's experiences with child sexual abuse in a sexual abuse case upheld).
 
 
 11
 In United States v. Toomey, 764 F.2d 678, 682 (9th Cir.1985), this court recognized that the parties were "entitled to some probing of juror bias as to narcotics specifically." Id. Toomey proposed several specific questions about the jurors' specific attitudes toward narcotics; the district court, however, asked only whether the jurors knew of any reason they could not be fair and impartial. The voir dire was deemed sufficient. The panel noted that the question had elicited specific responses relating to narcotics and resulted in the disqualification of several jurors. In the present case, the district court asked whether the jurors or their family members had personal experiences with narcotics and whether, despite the nature of the charge, they could be unbiased and fair. As a result, several jurors were disqualified based on their answers to narcotics-related questions. The court's inquiry into potential juror bias was adequate, and not an abuse of discretion.
 
 
 12
 B. Expert Testimony Regarding Drug Trafficking
 
 
 13
 Arevalo challenges the admission of the prosecution's expert testimony about how drug couriers are generally trusted by drug dealers, arguing that it failed to meet the Rule 702/Daubert standard, and that its prejudicial effect outweighed its probative value.[1]
 
 
 14
 Under Federal Rule of Evidence 702, a qualified expert witness may testify if the witness' "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue." Fed.R.Evid. 702; United States v. Peralta, 941 F.2d 1003, 1009 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992).[2]
 
 
 15
 Daubert applies to scientific testimony. This case concerns admission of expert testimony based on "other specialized knowledge." Accordingly, Daubert does not displace our earlier decisions which allow the admission of expert testimony regarding drug trafficking.[3] Admission of the expert testimony was not an abuse of discretion.
 
 C. Drug Courier Profile Testimony
 
 16
 Arevalo next argues that Agent McMillan's testimony about how drug couriers are generally trusted amounted to impermissible "drug courier profile" testimony, and is more prejudicial than probative.
 
 
 17
 We reject Arevalo's contention that the testimony constituted drug courier profile evidence. The Supreme Court has defined a drug courier profile as a "somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." Reid v. Georgia, 448 U.S. 438, 440 (1979) (per curiam). Drug Courier profile evidence is inadmissible as substantive evidence of guilt. United States v. Lui, 941 F.2d 844, 847 (9th Cir.1991).
 
 
 18
 Agent McMillan gave jurors general background information on the distribution of narcotics, the individuals who operate drug trafficking networks, and the courier's role in transporting drugs. This testimony, which did not link Arevalo's actions with the actions of drug smugglers in general, did not constitute drug profile evidence. See Lui, 941 F.2d at 847. Even assuming that McMillan's testimony constituted drug profile evidence, we would nonetheless find that its admission was harmless error. In light of the other evidence against Arevalo, it is "more probable than not that the prejudice resulting from the error did not materially affect the verdict." United States v. Lim, 984 F.2d 331, 334 (9th Cir.1993) (citation omitted).
 
 
 19
 We also reject Arevalo's contention that the prejudicial effect of McMillan's testimony outweighed its probative value. Although the background information about narcotics distribution was clearly probative, it was not substantive evidence of guilt. Accordingly, any prejudicial effect was minimal, and the district court did not abuse its discretion by admitting the evidence.
 
 D. Evidentiary Rulings
 1. Hearsay
 
 20
 Arevalo argues that it was error for the court to preclude testimony regarding conversations he had with Gentil and Don Rodolfo Perdomo. The Government objected to admission of the testimony as hearsay.[4] Arevalo argues both that the testimony was not hearsay because it was not offered for the truth of the matter asserted, and that the testimony was admissible under the state-of-mind exception of Federal Rule of Evidence 803(3).
 
 
 21
 The questions posed by defense counsel would have elicited Arevalo's testimony concerning his agreement with Rodolfo to deliver candy to a friend of Rodolfo's in New York, in return for which he was paid $200 in transportation costs. Also, that Arevalo agreed to buy a television, microwave and telephone for Rodolfo in return for which Rodolfo would purchase his plane ticket to the United States; that he agreed to purchase a humidifier, Nintendo, and telephone for Gentil in exchange for $150 to cover the cost; and that Arevalo understood no drugs were involved.
 
 
 22
 Assuming that the district court erred in ruling that the testimony was hearsay, any error in the ruling was rendered harmless because most of the testimony was admitted after counsel rephrased the questions. "[E]rror is harmless if it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." United States v. Echavarria-Olarte, 904 F.2d 1391, 1398 (9th Cir.1990)). Because the ruling would not have affected the verdict, the district court did not abuse its discretion.
 
 2. Rule 803(3) Exception
 
 23
 Arevalo's reliance on the Rule 803(3) state-of-mind exception to the hearsay rule is misplaced.[5] Arevalo proffered the testimony to show that he reasonably believed that the agreement terms did not involve drugs. In addressing the limiting language in Rule 803(3), this court, in United States v. Emmert, 829 F.2d 805 (9th Cir.1987), quoted from the Fifth Circuit:
 
 
 24
 [T]he state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind. If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition--"I'm scared"--and not belief--"I'm scared because [someone] threatened me."
 
 
 25
 Emmert, id. at 810, quoting United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir.1980) (citations omitted).
 
 
 26
 Under the Emmert analysis, the above statements proffered as "state-of-mind" exceptions to the hearsay rule are actually statements of defendant's belief, not his condition. The court properly ruled these statements inadmissible.
 
 
 27
 E. Admission of Customs Inspector's Testimony
 
 
 28
 Arevalo argues that a Customs Inspector's testimony that he searched the candy boxes because drugs had been found in similar candy boxes on prior occasions was irrelevant and prejudicial.
 
 
 29
 Arevalo cites United States v. Dean, 980 F.2d 1286 (9th Cir.1992), in arguing that this testimony was improperly admitted. In Dean, this court held that a witness' out-of-court statements regarding why he went to search a suspect's mobile home for weapons were irrelevant because the officer already had consent to search. Id. at 1288. Arevalo argues that since probable cause was not a disputed issue in this case, the specific reasons that the customs inspectors may have had to search Mr. Arevalo or his property were therefore irrelevant. We agree.
 
 
 30
 The government argues that the reasonableness of Inspector McCudden's action was relevant because it confirmed the absence of bias and supported his credibility. However, the reasonableness of McCudden's actions was not disputed. The defense never argued that McCudden's decision to stop Mr. Arevalo was an "arbitrary act of an overreaching government official." Thus, the reasonableness of the agent's actions is not of consequence to the determination of the action, i.e., it does not bear on any issue involving the elements of the offenses for which Defendant was charged and convicted. The government cites no authority for the proposition that testimony regarding the absence of bias is relevant when bias is not an issue in the case. Although the admission of the testimony was error, it was harmless in light of all of the other evidence of Defendant's guilt.
 
 
 31
 F. Exclusion of Defense Investigator's Testimony
 
 
 32
 The defense offered the testimony of an Investigator from the Office of the Federal Public Defender to testify that the pager number Arevalo gave to customs agents was valid. Arevalo argues that the testimony was relevant to prove that he did not fabricate a number or intend deceive customs inspectors, thus buttressing his credibility and impeaching Agent Guzman's testimony that the pager number was invalid.
 
 
 33
 The Government points out that in the 71 day period between the time Arevalo provided the pager numbers (November 26, 1993), and the time the pager worked (February 3, 1994), the pager number may have been disconnected, reassigned, temporarily out of service due to mechanical problems, or simply inactivated by the user. The district court ruled that the testimony was irrelevant, given the substantial lapse of time between the time Arevalo provided the numbers and the time the pager became operative. We agree. The court did not abuse its discretion in precluding the testimony.
 
 
 34
 G. Motion For New Trial based on Newly Discovered Evidence
 
 
 35
 Denial of a motion for new trial based on newly discovered evidence is reviewed for an abuse of discretion. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 258 (1992).
 
 
 36
 To prevail on a motion for new trial, the movant must satisfy a five-part test: (1) the evidence must be newly discovered, (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and the evidence must indicate that a new trial would probably result in acquittal. Fed.R.Crim.P. 33; United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir.1991), citing United States v. Lopez, 803 F.2d 969, 977 (1986), cert. denied, 481 U.S. 1030 (1987). Applying this test, the district judge's denial of Defendant's motion was within his discretion.
 
 
 37
 Defendant's "newly discovered evidence" consisted of pager records for November, 1993 showing that the pager number Arevalo gave inspectors on November 26 was valid on that day. The record reflects that defense counsel knew that Agent Guzman was unable to call the pager number at least one week before trial. Furthermore, the discovery provided to Defendant before trial indicated that Defendant was unsuccessful in calling any of the phone numbers that he had provided. Id. The fact that Arevalo never got an answer to any of his calls should have put Defendant on notice of a potential problem with the pager numbers, and prompted him to obtain the pager records earlier. Failure to do so shows a lack of due diligence on Defendant's part. Most importantly, the pager record evidence would not have affected the outcome in this case, because the jury could have believed that agent Guzman could not call the pager number because it was turned off or out of service, or that Arevalo provided pager numbers, whether working or not, to better his chances of avoiding jail.
 
 
 38
 Even assuming the district court improperly ruled on particular testimony, the error was harmless. The issue at trial was Arevalo's knowledge of the cocaine in the candy boxes, and the record is replete with evidence of that knowledge. The evidence of Defendant's knowledge of the cocaine in the candy boxes is overwhelming. Accordingly, the judgment and sentence of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior District Court Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Daubert v. Merrell Dow Pharmaceuticals, Inc., --- U.S. ----, 113 S.Ct. 2786 (1993)
 
 
 [2]
 Specifically, the rule provides:
 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine the fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.
 
 
 [3]
 See United States v. Espinosa, 827 F.2d 604, 612 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir.1987); United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir.1984)
 
 
 [4]
 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c)
 
 
 [5]
 Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial
 (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.