Darryl GRIFFIN, Petitioner,

v.

Mary BERGHUIS, Respondent.

No. 00–10496–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Jan. 6, 2004.

Robert R. Elsey, Grosse Pointe Park, MI, for petitioner.

Debra M. Gagliardi, Vincent J. Leone, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

LAWSON, District Judge.

Petitioner Darryl Griffin filed through counsel this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated by the Michigan Department of Corrections in violation of the Constitution of the United States. The matter was referred to Magistrate Judge Charles E. Binder for general case management, and the magistrate judge filed his report on September 9, 2002 recommending that the petition be denied. The petitioner timely submitted objections and the matter is now before the Court for *de novo* review. Having analyzed the report, the petitioner's objections thereto, and the other materials on file, the Court concludes that although it disagrees with the magistrate judge's finding that certain claims are procedurally defaulted, the claims in the petition nonetheless lack merit and are not worthy of habeas relief. Accordingly, the Court will adopt the report in part, adopt the recommendation, and deny the petition.

### I.

The magistrate judge based his summation of the facts, to which neither party has objected, on the following recitation of the record by the Michigan Court of Appeals:

After a lengthy period of investigation and surveillance, the police conducted a search and seizure at 732 Bethany in Saginaw on the morning of August 22, 1996. Defendant was in the house at the time, having slept there the night before. On a dresser in the bedroom where defendant said that he had spent that night, the police found a quantity of cocaine in plain view alongside some personal items of defendant. According to expert testimony at trial, the amounts of cocaine and particular drug paraphernalia that the police found at the house indicated that the premises were used as a locus for drug trafficking. During the course of the investigation, an informant, operating under police supervision, purchased cocaine from defendant on April 18 and 29, and August 26, 1996, and on June 11 that year viewed defendant with some cocaine that defendant was offering for sale, each of these events occurring at the house at 732 Bethany.

This house was the residence of Tonja Simpson (Simpson), her and defendant's minor son, and Simpson's father, who was renting the house from his ex-wife. Simpson was arrested and charged along with defendant. Her case was eventually severed from defendant's, and she testified at defendant's trial pursuant to a plea agreement.

The jury found defendant guilty as charged. The trial court sentenced defendant to one to two years' imprisonment for maintaining a drug house, that sentence to run concurrently with sen-

tences of three to forty years' imprisonment for each of the remaining five convictions, the latter all to run consecutively to each other and to a sentence for an earlier conviction.

*People v. Griffin,* 235 Mich.App. 27, 30–31, 597 N.W.2d 176, 180 (1999). The petitioner was convicted of delivery of less than 50 grams of cocaine, Mich. Comp. Laws § 333.7201(2)(a)(iv); possession with intent to deliver cocaine less than 50 grams, Mich. Comp. Laws § 333.7401(2)(a)(4); conspiracy, Mich. Comp. Laws § 750.157(a); and maintaining a drug house, Mich. Comp. Laws § 333.7405(1)(d).

The petitioner challenged his convictions in the Michigan Court of Appeals, which rejected his claims in a published opinion. *Griffin,* 235 Mich.App. at 30, 597 N.W.2d at 180. The Michigan Supreme Court denied review. *People v. Griffin,* 461 Mich. 919, 605 N.W.2d 316 (1999) (Table). The instant petition was filed through counsel on November 27, 2000 asserting the six grounds for relief summarized by the magistrate judge on pages 6–7 of his report. The respondent answered the petition, contending that the claims asserted lacked merit, were not cognizable on habeas review, or are procedurally defaulted.

## II.

As the magistrate judge correctly observed, the petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising the question of effective assistance of counsel, as well as other constitutional claims. *See Wiggins v. Smith,* —— U.S. ——, ——, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because the petitioner's application was filed after that date, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 123 S.Ct. at 2535 (quoting *Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas

corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495. *See also McAdoo v. Elo,* 346 F.3d 159, 165–66 (6th Cir.2003); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir.2003) (en banc); *Lewis v. Wilkinson,* 307 F.3d 413, 418 (6th Cir.2002).

### A.

The petitioner's first claim is that evidence offered at trial was not constitutionally sufficient to support his conviction of maintaining a drug house. The petitioner argues that because he was "just visiting" Ms. Simpson at the time police searched her home and did not live there, no rational jury could have so convicted him.

There is no question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318–19, 99 S.Ct. 2781 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16, 99 S.Ct. 2781. Furthermore, unless exceptional circumstances are present, such as evidence of "obvious subterfuge to evade consideration of a federal issue," a state court's construction of its own statute is binding upon a federal court. *Mullaney v. Wilbur,* 421 U.S. 684, 691 n. 11, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

The magistrate judge agreed with the respondent that sufficient evidence existed in the record to find the petitioner guilty of maintaining a drug house. The Michigan Court of Appeals in the petitioner's appeal rejected a construction of the anti-drug-house statute that would require ownership of the actual residence where a drug house was being maintained. *See* Mich. Comp. Laws § 333.7405(1)(d) ("A person ... [s]hall not knowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, or that is used for keeping or selling controlled substances in violation of this article."). Rather, under the state court of appeals' construction, the statute requires only that the petitioner "exercise authority or control over the property for purposes of making it available for keeping or selling proscribed drugs, and to do so continuously for an appreciable period." *Griffin,* 235 Mich.App. at 32, 597 N.W.2d at 181. The magistrate judge noted that the petitioner had not disputed that sufficient evidence existed for a conviction under this construction and further observed that the petitioner's conviction was supported by the informant's testimony at trial that he had purchased crack cocaine from both the petitioner and Simpson from her residence on several occasions, and had observed rocks of crack cocaine there in one other instance.

In his objections, the petitioner again challenges the conclusion that this evidence was sufficient to convict him of maintaining a drug house. The petitioner asserts that the informant's testimony indicated that the petitioner only sold crack cocaine to him on a few occasions, not all four as alleged. He also complains that the evidence of the petitioner's contact with the premises did not demonstrate control over an "appreciable period" of time. The Court disagrees. Viewed in the light most favorable to the prosecution, the evidence showed at a minimum that the petitioner either directly sold or was in the presence of crack cocaine over a period of several months. There was evidence from which the jury could conclude that illegal drugs were being sold from the Bethany Street house and that the business was directed by the petitioner. The question of whether this drug operation was properly attributable to Tonja Simpson, the petitioner, or both was one for the jury, which resolved the issue in the state's favor and against the petitioner. The testimony of one witness to the elements of a crime is sufficient to demonstrate guilt beyond a reasonable doubt. *Brown v. Davis,* 752 F.2d 1142, 1145 (6th Cir.1985).

The Court will therefore overrule the petitioner's objections as to this claim.

### B.

The petitioner's first claim also challenges his conviction for possession with intent to distribute on a similar basis. The Michigan Court of Appeals ruled as follows:

The elements that the prosecutor must prove to establish possession with intent to deliver less than fifty grams of cocaine include "that defendant knowingly possessed the cocaine with the intent to deliver." *People v. Wolfe,* 440 Mich. 508, 517, 489 N.W.2d 748 (1992), amended 441 Mich. 1201, 489 N.W.2d 748 (1992). Possession may be actual or constructive. "The essential question is whether the defendant had dominion or control over the controlled substance." *People v. Konrad,* 449 Mich. 263, 271, 536 N.W.2d 517 (1995). One need not have actually owned the prohibited substance to have possessed it, and one may possess the substance jointly with one or more others. *Wolfe, supra* at 520, 489 N.W.2d 748. However, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id.* " ' "[M]ere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession." ' " *United States v. Disla,* 805 F.2d 1340, 1351 (C.A.9, 1986), quoting *Murray v. United States,* 403 F.2d 694, 696 (C.A.9, 1968), quoting *Arellanes v. United States,* 302 F.2d 603, 606 (C.A.9, 1962).

Although none of the cocaine that the police seized on August 22, 1996, was found on defendant, "constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Wolfe, supra* at 521, 489 N.W.2d 748. Several factors linked defendant to the cocaine found at 732 Bethany. The evidence indicated that defendant had substantial control over the premises for purposes of drug dealing, having four times offered cocaine for sale from that house, and having been found at the house with cocaine in plain view and in proximity of some of defendant's possessions when the police conducted their search. Further, Simpson testified that the cocaine found on top of the dresser, in the room where defendant said that he had spent the night before the search and seizure, was defendant's. This evidence amply supports the jury's finding that the element of possession was met.

*Griffin,* 235 Mich.App. at 34–35, 597 N.W.2d at 182.

■ In his objections, the petitioner generously acknowledges the concept of constructive possession, which he refers to as a "dangerous doctrine," Pet.'s Obj. to R & R at 3, although it is a tenet that is firmly entrenched in American jurisprudence. *See, e.g. United States v. Johnson,* 344 F.3d 562, 565 (6th Cir.2003) (noting that "[c]onstructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located") (quoting *United States v. Pruitt,* 156 F.3d 638, 649 (6th Cir.1998) (quoting *United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir.1991))). Nonetheless, he reiterates his original assertion that the evidence was insufficient to find that he in any way constructively possessed the cocaine found by police and allegedly sold by the petitioner to the police informant. The magistrate judge properly rejected this contention for the petitioner's second claim as well:

Petitioner has again overlooked the key fact that, under Michigan law, proving residence at the location where the drugs were found is not an essential element of the crime with which he was charged. To the contrary, the prosecution only needed to prove that Petitioner had either actual or constructive posses-

sion of the contraband, and constructive possession only requires a showing of circumstances which would suggest a nexus between the criminal defendant and the drugs. Here, the court of appeals pointed to the testimony of Suffety and Simpson as providing sufficient evidence to meet this element: Simpson testified that the drugs belonged to Petitioner, and Suffety testified that Petitioner sold him drugs from that location. The jury's duty was to decide whether this testimony was believable in light of the incentives these two witnesses had to testify against Petitioner, which were vigorously emphasized for the jury by defense counsel, and apparently the jury found the witnesses to be credible.

R & R at 17. The Court agrees with the magistrate judge that there was sufficient evidence in the record, which, if believed, supported the petitioner's conviction on this charge. The petitioner's objections to the contrary are overruled.

### C.

The petitioner's second claim alleges that the prosecution improperly introduced evidence that the petitioner was a drug supplier and that the police surveilled the Bethany Street house in an effort to detect drug trafficking activity. The petitioner's fifth claim contends that he was denied a fair trial when the prosecutor improperly vouched for the credibility of Tonja Simpson. The magistrate judge found that both claims were likely barred by the doctrine of procedural default, which had explicitly been invoked by the Michigan Court of Appeals for failure to raise a contemporaneous objection. The magistrate judge further concluded that the contemporaneous objection rule was an adequate and independent state procedural ground sufficient to foreclose federal habeas review, and that neither cause and prejudice or actual innocence had been demon-

strated that would permit this Court to overlook the default.

█ The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 752, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F.3d at 162; *see Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

█ For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state

procedural rule. *Williams v. Coyle,* 260 F.3d 684, 693 (6th Cir.2001), *cert. denied,* 536 U.S. 947, 122 S.Ct. 2635, 153 L.Ed.2d 816 (2002); *see also Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[ ] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson,* 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).

■ If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust,* 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

■■ Here, the magistrate judge correctly noted that the Michigan Court of Appeals, the last court to issue a reasoned opinion with regard to the petitioner's claims, explicitly invoked the procedural default incurred when the petitioner's attorney failed to object at the time these two alleged errors occurred. However, the Court disagrees with the magistrate judge's conclusion that the contemporaneous objection rule is firmly established and regularly followed in the Michigan courts as to these two claims. As this Court explained in *Bentley v. Bock,* 239 F.Supp.2d 686 (E.D.Mich.2002), while the contemporaneous objection rule is fairly established as a preferred procedure, and appears to be regularly followed as to some claims, Michigan courts regularly waived contemporaneous objection defaults at the time of the petitioner's conviction when the issue was perceived to concern "constitutional due process rights" and the like. *See, e.g., People v. Crear,* 242 Mich. App. 158, 166, 618 N.W.2d 91, 96 (2000); *see also People v. Wilson,* 230 Mich.App. 590, 593, 585 N.W.2d 24, 26 (1998); *People v. Johnson,* 215 Mich.App. 658, 669, 547 N.W.2d 65, 71 (1996) ("It is well established that an important constitutional issue may be raised on appeal for the first time and addressed by the appellate court."). In fact, the Michigan Court of Appeals explicitly invoked a similar exception in this case to preserve review of the petitioner's Fourth Amendment claim discussed below. A rule of exception which itself depends on the perceived merits of the federal claim cannot fairly be considered "adequate and independent" of federal law so as to preclude federal habeas review. *Bentley,* 239 F.Supp.2d at 694. Accordingly, the Court will examine the merits of the petitioner's claims.

1.

In his second claim, the petitioner alleges that "the state improperly adduced testimony that petitioner was a drug traffick-

er." Br. in Support of Petition at 11. Then, through a subtle shift in nomenclature, the petitioner attempts to engraft onto his argument a line of cases that deals with the substantive use of "drug courier profile" evidence. No such evidence was involved in this case, however. "The 'drug courier profile' is an abstract of characteristics found to be typical of persons transporting illegal drugs." *Florida v. Royer,* 460 U.S. 491, 494 n. 2, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). "Drug courier profiles are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers. Generally, the admission of this evidence is nothing more than the introduction of the investigative techniques of law enforcement officers." *United States v. Hernandez–Cuartas,* 717 F.2d 552, 555 (11th Cir.1983). The petitioner readily acknowledges that drug courier profile testimony is admissible to demonstrate why the defendant was stopped for investigation, *see United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Ward,* 134 F.3d 373, 1998 WL 45491 (6th Cir.1998), but insists that such profiles may not be used as substantive evidence of guilt. However, the petitioner's argument misses the mark since the state did not introduce evidence of the characteristics of drug couriers in this case and argue that the jury should infer from those characteristics—that profile—that the petitioner was a drug courier.

The cases cited by the petitioner suggest that the admission of drug courier profile evidence in a criminal trial for the purpose of proving that the defendant fit the profile and therefore must be guilty is *per se* erroneous. *See United States v. Cruz,* 981 F.2d 659, 663, 664 (2d Cir.1992) (finding that "guilt may not be inferred from the conduct of unrelated persons" and condemning the prosecution's "[i]njection of a defendant's ethnicity into a trial as evidence of criminal behavior"); *United States v. Lui,* 941 F.2d 844, 847 (9th Cir. 1991) (noting that "[e]very defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officials in investigating criminal activity"); *United States v. Jones,* 913 F.2d 174, 177 (4th Cir.1990); *United States v. Quigley,* 890 F.2d 1019, 1023–24 (8th Cir.1989). Evidence of this nature has been approved at trial in limited circumstances, such as to provide background for an investigatory stop or to impeach a defendant's assertion of poverty as proof that he was not a distributor of illegal drugs. *See Lui,* 941 F.2d at 847.

The courts deciding the cases cited above, all of which challenged convictions on direct review, did not conclude that such profile evidence, even when ethnicity was injected as part of the profile, required automatic reversal. Rather, the courts evaluated the offending evidence in light of the full record to determine whether it likely contributed to the conviction. In *Cruz,* where there was little evidence other than the testimony of an informant, and the "expert" profile evidence was used to bolster the informant's testimony, the court concluded that the evidence was prejudicial and reversed the conviction. 981 F.2d at 663–64. In *Quigley* and *Lui,* on the other hand, the courts found that other evidence in the record overwhelmingly established the defendants' guilt. Lui, for instance, was found in possession of "28 pounds of high-quality heroin in suitcases to which he had the keys," 941 F.2d at 848, and Quigley "had in his possession, in plain view, within an arm's reach in the car, one kilogram (2.2 lbs.) of high-quality cocaine." 890 F.2d at 1024. The erroneous introduction of the profile

evidence did not require reversal in those cases.

There are multiple problems with the petitioner's claim. First, as previously mentioned, the prosecution never introduced drug courier profile evidence of the type referenced in the cases cited above. No attempt was made to establish activities of a stereotypical drug dealer followed by suggestions that the petitioner conformed to that profile. Rather, two witnesses merely testified as to the (apparently correct) belief of one of them that the petitioner was a drug trafficker. Second, the reason for which these statements were made was not to provide substantive evidence of guilt, as the petitioner suggests, but rather to provide background information as to why and how police began monitoring the petitioner's activities. Here, the police informant provided duplicative testimony that Officer McMahan "had already known" the informant received his drugs from the petitioner. Trial Tr. at 159. Officer McMahan confirmed the informant's statement, stating that he observed suspicious activity at the Bethany Street residence, namely numerous cars arriving and departing, which in his numerous years of experience was indicative of drug trafficking. Third, and most importantly, the petitioner cites no Supreme Court authority to support the proposition that police officers may not utilize their knowledge and experience with prior drug traffickers to determine whether a particular transaction or individual may be involved in wrongdoing. In fact, the Supreme Court has concluded exactly the opposite. *See Sokolow*, 490 U.S. at 10, 109 S.Ct. 1581 (finding that the correspondence of factors properly believed to establish reasonable suspicion with a drug courier profile "does not somehow detract from their evidentiary significance as seen by a trained agent").

This claim lacks merit.

2.

■■■ The petitioner's fifth claim is that the prosecution improperly vouched for Tonja Simpson's credibility at trial. Prosecutorial misconduct will form the basis for a new trial, and habeas relief, only if the relevant misstatements were so egregious so as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). *See also Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir.1999). In deciding whether prosecutor misconduct warrants habeas corpus relief, the court must first decide whether the prosecutor's comments were improper and then determine whether the remarks were sufficiently flagrant by considering four factors: (1) the likelihood that the statements would prejudice the defendant or mislead the jury; (2) whether the remarks were isolated or part of a pattern; (3) whether the prosecutor's statements were deliberately or accidentally presented to the jury; and (4) whether the other evidence against the defendant was substantial. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir.2000), *overruled on other grounds by, Bowling v. Parker*, 344 F.3d 487, 501 n. 3 (6th Cir. 2003), (citing *United States v. Carroll*, 26 F.3d 1380, 1385–87 (6th Cir.1994)).

■■■ The petitioner's claim fails at the threshold level, as he points to no portion of the transcript in which the prosecution improperly vouched for the credibility of Tonja Simpson. Improper vouching occurs when the prosecutor makes comments indicating that he or she has "a personal belief" in the witness's testimony, thus putting the prestige of the prosecuting attorney's office behind that witness's iteration of the facts. *United States v. Martinez*, 253 F.3d 251, 254 (6th Cir.2001); *United States v. Francis*, 170 F.3d 546,

550 (6th Cir.1999). Here, the petitioner himself admits that the prosecution merely inquired whether Ms. Simpson had any prior convictions and received a negative answer. No personal belief as to her veracity was expressed before the jury. *Compare Francis,* 170 F.3d at 550 (finding that the prosecutor improperly vouched for a witness by suggesting that she would not have entered into a plea bargain with a witness if she believed him to be untruthful). Inquiry about the absence of prior convictions is not improper vouching, and cannot form the basis for habeas relief.

### D.

The petitioner's third claim challenges the sufficiency of the warrant that led to the search of the Bethany Street residence as lacking in probable cause in the absence of recklessly false allegations. The Michigan Court of Appeals also rejected this claim:

> Where an affidavit in support of a search warrant includes false information provided either intentionally or with a reckless disregard for the truth, evidence obtained pursuant to that warrant must be suppressed if probable cause would not exist without the misinformation; where the affidavit includes sufficient untainted information to establish probable cause apart from the misinformation, the affidavit, and resulting search warrant, remain valid within the scope and to the extent of the untainted information.

> The police detective who provided the affidavit at issue included the assertion that the informant with whom he was working had established credibility by providing information in the past that had at least three times resulted in arrests of drug traffickers and seizures of controlled substances. Uncontroverted testimony during the preliminary examination and during trial indicated clearly that in fact the informant before the instant case had not provided information leading to any arrests or seizures concerning controlled substances. We agree with defendant that the police detective's exaggeration concerning the informant's history of assisting with drug investigations was misinformation that could not support the search warrant. However, the untainted assertions within the affidavit include a summary of observations of drug trafficking activity made by the police pursuant to their surveillance of the premises in question, and the informant's statements were corroborated by reliable police investigations. If the single sentence containing the misinformation of which defendant complains is redacted from the affidavit, what remains well supports the resulting search warrant. For these reasons, the evidence seized pursuant to that warrant was properly admitted at trial.

*Griffin,* 235 Mich.App. at 42–43, 597 N.W.2d at 185 (citations omitted).

 If this Court were to review the validity of the search warrant independently, it is likely that the Court would reach the same conclusion as the state court of appeals. The petitioner's Fourth Amendment claim is insubstantial on the merits, although he may not challenge on habeas review the correctness of the state court's determination of the search warrant's validity. Federal courts will not address a Fourth Amendment claim in a habeas proceeding if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). This Court performs two distinct inquiries when determining whether a petitioner may raise a

claim of illegal search and seizure in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.2000) (quoting *Riley v. Gray,* 674 F.2d 522 (6th Cir.1982)).

Here, the magistrate judge correctly concluded that the petitioner was provided an adequate opportunity to raise his Fourth Amendment claims in the Michigan state courts. The petitioner claims in his application and again in his objections that the unavailability of an automatic mistrial rule once a trial witness contradicts a search warrant affidavit demonstrates that Michigan's method of adjudicating Fourth Amendment claims is inadequate. He then dismisses the venerable and clearly-established rule of *Stone v. Powell* as a "technicality" by which "review of such an important Fourth Amendment issue" is "skirted." Pet.'s Obj. to R & R at 7. As the magistrate judge noted, however, the question on habeas review is whether "*any* adequate mechanism ... in the abstract" is available to raise such a claim, not the mechanism the petitioner would prefer. R & R at 27. Here, the petitioner's co-defendant thoroughly litigated the Fourth Amendment issue before trial, and the Michigan Court of Appeals permitted the petitioner to benefit from the efforts of his co-defendant on appeal. The claims were fairly considered and rejected. *Stone v. Powell* requires nothing more.

### E.

■ The petitioner's fourth claim argues that he was denied a fair trial when a prosecution witness made an unsolicited comment that suggested to the jury that the petitioner had previously been incarcerated and therefore convicted of a crime. The Michigan Court of Appeals also rejected this claim:

The informant who assisted with the investigation of defendant was instructed not to say anything in front of the jury about defendant's having been incarcerated before, but at trial, when asked during direct examination about receiving a telephone call from defendant shortly after the latter's arrest, the informant replied, "He said, guess where I'm at? ... I'm in jail.... And he says, well, I ain't going back to prison again." Defense counsel requested a mistrial on the basis of the informant's statement. The trial court denied the request, stating, "I'll just instruct. It won't—will not be followed up or argued in closing argument." Neither counsel nor any witness made any further mention before the jury of defendant's incarceration, and in the end the trial court provided no instruction regarding the matter. Defendant argues on appeal that this mention of his earlier incarceration had the effect of denying him a fair trial. We disagree.

This Court reviews a lower court decision regarding a motion for a mistrial for an abuse of discretion. *People v. Haywood,* 209 Mich.App. 217, 228, 530 N.W.2d 497 (1995). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." Id. (citations omitted).

It is well settled that evidence of a prior conviction may be prejudicial to the accused, the danger being that the jury "will misuse prior conviction evidence by focusing on the defendant's general bad character...." *People v. Allen,* 429 Mich. 558, 569, 420 N.W.2d 499 (1988). However, not every instance of mention

before a jury of some inappropriate subject matter warrants a mistrial. Specifically, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood, supra* at 228, 530 N.W.2d 497. In this case, it was in answering the prosecutor's questions concerning the course of the informant's contacts with defendant that the informant volunteered that defendant had made reference to his having been in prison. Defendant does not dispute that this was a proper line of questioning, nor does he suggest that the prosecutor expected the improper response. Because the mention of prior incarceration of which defendant complains was not elicited by the prosecutor but was instead volunteered in response to a proper question, that brief incidental mention did not warrant a mistrial.

Nor do we find error in the trial court's not having provided the jury with a curative instruction. Had defense counsel asked the trial court to follow through with its indication that it would provide such an instruction, the court would have been obliged to do so. However, "failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." M.C.L. § 768.29; M.S.A. § 28.1052. *See also People v. Hendricks,* 446 Mich. 435, 440–441, 521 N.W.2d 546 (1994). Further, because a special instruction concerning defendant's having been incarcerated would necessarily have highlighted that fact, defense counsel may well have decided not to bring that double-edged sword into play as a matter of sound strategy.

*Griffin,* 235 Mich.App. at 36–37, 597 N.W.2d at 182–83. The petitioner claims that this reference to his prior incarcera-

tion violated his rights under *Bruton v. United States,* 391 U.S. 123, 131, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton,* the Supreme Court held that the admission of a nontestifying co-defendant's confession at a joint trial violated the petitioner's right of confrontation despite the jury being instructed that the co-defendant's confession could not be used to determine the petitioner's guilt or innocence. The Court held that the prejudice that may result from a co-defendant's confession "cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." *Id.* at 132, 88 S.Ct. 1620 (internal quotation marks and citations omitted).

The magistrate judge agreed with the respondent that this claim lacked merit, noting that while *Bruton* did in fact indicate that "[a]n important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence," *id.* at 132 n. 6, *Bruton* also made clear that "instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently," and that "[a] defendant is entitled to a fair trial but not a perfect one." *Id.* at 135, 88 S.Ct. 1620 (citation omitted). The magistrate judge also found persuasive indications that the statement was inadvertent, provided no details about the nature of the prior conviction, and that no further attention was drawn to the remark.

The petitioner objects to this finding on multiple grounds. He insists that given the notice of all parties of the possibility that the informant would refer to prior incarceration, the comment cannot be considered inadvertent. He also cites cases well over a century old indicating that the "common law" deems it unfair to use unrelated, prior convictions to convict a defendant of a subsequent crime. He also relies

on *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), for the proposition that a fair trial is almost impossible once a probative prior conviction has been placed before the jury.

The petitioner, however, incorrectly cites *Spencer*, which in fact held that the probative value of prior convictions typically offsets their unfairly prejudicial effect in many cases, especially when a limiting instruction regarding their proper usage is given to the jury. *See* 385 U.S. at 562, 87 S.Ct. 648. Furthermore, in *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), on the way to explicitly reaffirming the rule in *Spencer*, the Supreme Court rejected Justice Stevens's dissent arguing that such evidence was usually fundamentally unfair in light of this country's common-law evidentiary jurisprudence and that *Spencer* had been called into question by *Bruton*. *Id.* at 438 n. 6, 103 S.Ct. 843 (noting that the "common law, like our decision in *Spencer*, implicitly recognized that any unfairness resulting from admitting prior convictions was more often than not balanced by its probative value and permitted the prosecution to introduce such evidence without demanding any particularly strong justification"). In any event, no provision of the Bill of Rights forbids introduction of evidence of a prior conviction at trial, and only conduct significantly more flagrant than found here will be so offensive to fair play and decency that it will independently violate the Due Process Clause in and of itself. *See Dowling v. United States*, 493 U.S. 342, 352–53, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

There was nothing flagrant or overbearing about the statement by the police informant in this case. The informant, whom the record establishes had been warned not to make any reference to prior criminal convictions of the petitioner, was merely repeating the petitioner's own incriminatory statement that he did not wish to return to prison. The comment although improper and violative of the court's previous instructions was brief, it was not subsequently expanded upon by any party, and it may not even have registered as indicative of a prior conviction with the members of the jury. Although no limiting instruction was given, this was only because defense counsel had not requested such an instruction. Given the fleeting nature of the reference at issue, counsel may well have concluded that requesting a limiting instruction would have done more harm than good, making clear to the jury that the petitioner in fact did have prior criminal convictions.

The magistrate judge correctly recommended that this claim be denied.

### F.

 Finally, the petitioner requests an evidentiary hearing. The petitioner does not explain in his objections why he is entitled to an evidentiary hearing, other than to assert that "he did not fail to develop the factual basis in state court." Pet.'s Obj. to R & R at 12. An evidentiary hearing, however, may be held only when the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir.2002). No material facts are in dispute with regard to any of the claims stated in the petition, and, for the reasons stated above, none of the claims presented is a candidate for habeas relief.

### III.

Although the Court disagrees with the magistrate judge's suggestion that the petitioner's second and fifth claims were procedurally defaulted, the magistrate judge

correctly concluded that the decisions of the Michigan courts rejecting the petitioner's claims were neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

Accordingly, it is **ORDERED** that the Report is **ADOPTED IN PART.**

It is further **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**